CLAPP *v.* MACFARLAND.

---

McPHERSON *v.* SAME.

---

HEINZ *v.* SAME.

---

STREETS AND HIGHWAYS; CONDEMNATION PROCEEDINGS.

1. Under that provision of the act of Congress of June 6, 1900, for the condemnation of land for the extension of Sixteenth street, which empowers the lower court to "hear and determine any objections" to the verdict or award of the jury of condemnation, such exceptions should be heard on affidavits; and parties excepting are not entitled to introduce testimony in support of their exceptions.

2. In such a proceeding, while an appeal will lie to this court from an order overruling exceptions to the award of the jury of condemnation, this court can only review such ruling, when based upon matters of fact, when such facts are brought before it by bill of exceptions or in some other authorized way.

3. Although, on such an appeal, there may appear in the record sufficient to show that the jury of condemnation may have been misled or improperly influenced by counsel for the District Commissioners, as to the proper standard of assessment, yet where it does not appear that the amount actually assessed exceeds legal limits, this court cannot pass upon the question of fact whether the jury would have adopted a different standard of assessment in the absence of the threat made or the influence alleged to have been exerted upon them.

4. It cannot be said on such an appeal, that because the jury of con-

demnation assessed benefits against one of the exceptants to an amount greater than the award of damages to him for the taking of part of his property, that this was necessarily wrong of itself, as a small part of his land may have been taken and a larger part may have been benefited.

Nos. 1134, 1136 and 1139. Submitted May 13, 1902. Decided June 4, 1902.

HEARING on appeals by three exceptants from an order of the Supreme Court of the District of Columbia, sitting as a District Court, overruling their exceptions to a verdict or award of a jury of condemnation under the act of Congress of June 6, 1900, providing for the extension of Sixteenth street in the city of Washington and for the widening of Columbia road, and for other purposes.          *Affirmed.*

The COURT in the opinion stated the case as follows:

These three appeals grow out of proceedings instituted in the Supreme Court of the District of Columbia by the Commissioners of the District under an act of Congress of June 6, 1900, providing for the extension of Sixteenth street in the city of Washington from Columbia road to Park street, outside of the former limits of said city (31 Stat. 668), and also for the widening of Columbia road, and for other purposes.

Section 1 of this act provided for the extension of the tracks of the Metropolitan Railroad Company from their then existing terminus out along Columbia road and Sixteenth street as far as Park street.   Section 2 provided that, before this extension should be constructed, Columbia road should be widened to a width of 100 feet and Sixteenth street to a width of 85 feet; and that the Commissioners of the District should by petition institute a proceeding in the Supreme Court of the District, sitting as a District Court, for the condemnation of the land necessary for such extension.   Section 4 provided that of the amount to be awarded for damages for the land to be taken for the extension, the jury to be appointed under the act should assess such proportional share as they

might find as benefits, and to the extent of such benefits, against the railroad company and the adjoining parcels of land and such other parcels as they would find to be benefited by the extension; for which purpose they were to take into consideration the respective situations of the several parcels and the benefits they were to receive from the extension of Columbia road; but this was with the proviso that, if the aggregate amount of benefits to be found by the jury should be less than one-half of the amount which they should award as damages for the taking of the land, the Commissioners might, in their discretion, within thirty days after the award and assessment, reject the same, and all the proceedings should be null and void.

Section 5 provided for notice to be given to all persons interested.    Section 6 provided for a jury of seven disinterested persons to be summoned by the marshal under the order of the court and to be impaneled by the court, whose duty it should be impartially and to the best of their judgment to assess the damages and the benefits in the premises, and for that purpose to view the land, and thereafter, either in the presence of the court, or otherwise, as the court might direct, to hear evidence on the part of the District of Columbia and of any person or persons interested, and thereupon to return their verdict.    Section 8 provided that the court should have power to hear and determine any objections that might be filed to said verdict or award, and to vacate the same, either in whole or in part, when satisfied that it was unjust or unreasonable, and in such event to cause a new jury to be summoned to make the award and assessment.    Section 9 provided that, upon the final confirmation of the verdict of the jury, the awards for damages should be paid forthwith; and Section 10 provided that the assessments, when confirmed by the court, should be a lien on the lands assessed, should be collected as special improvement taxes are authorized to be collected, and should be payable in four equal annual instalments, with interest at the rate of 4 per centum.    Section 13 provided that no appeal from the decision of the court should delay the payment of the awards to others not appealing.

There were various other provisions contained in the act not important to be here stated.

In pursuance of the act the Commissioners filed their petition, notice was given, and a jury was summoned and impaneled, the members of which are conceded to have been thoroughly competent men. They were duly instructed by the court, and entered upon the performance of their duties. On September 27, 1900, they returned their verdict, in which they found the aggregate amount of damages for the taking of the land to be $181,858, and they assessed benefits to the amount of one-half thereof, or $90,929. It is understood that all the persons interested, who were quite numerous, acquiesced in the verdict, except a comparatively small number, who filed exceptions thereto, and that of this minority only the three appellants here have signified their dissent from the action of the court overruling their exceptions. These three, however, did file exceptions, wherein they alleged that the assessments against their several pieces of property were unreasonable, unjust, and unconstitutional, and stated their grounds for this allegation. In the record in Clapp's case these grounds are more fully developed and more supported by affidavits than in either of the other cases; but it is understood that the questions of law raised are the same in all the cases, and that the facts in all the cases are to be taken as developed in that of Clapp.

The exceptions were heard and considered by the court, and were all overruled, and the verdict of the jury, both as to award and assessment, was confirmed. From the order of confirmation these three several appeals have been prosecuted.

*Mr. Michael J. Colbert* for the appellant in No. 1134.

*Mr. Chapin Brown* for the appellant in No. 1136.

*Mr. W. Walton Edwards* for the appellant in No. 1139.

*Mr. Andrew B. Duvall,* Corporation Counsel, and *Mr. Arthur H. O'Connor,* Assistant, for the appellee.

Mr. Justice Morris delivered the opinion of the Court:

We may consider all the causes upon the appeal of Clapp and the full and very satisfactory assignments of error therein. Not all these assignments, however, are greatly relied on. The principal of them is, that the court below did not, as required by the statute, " hear and determine " the objections filed to the verdict of the jury, in the sense in which the law intended such hearing to be had. It is argued that the appellants should have been allowed and should have had an opportunity afforded to them to introduce testimony in support of their exceptions; and it is suggested even that the cause should have been sent to an auditor or commissioner to take such testimony and report the same to the court.

We can find no foundation for this contention in the law. The statute under consideration may be, and probably is imperfect; an entirely just and unobjectionable statute for the conduct of these public improvements would seem to remain yet to be enacted. But this act is undoubtedly a vast improvement upon those which we have had under consideration in other similar cases; and the small number of those who have deemed themselves aggrieved by the result of its operation would seem to indicate that on the whole it has been fairly and justly administered. The principle of this and of all other recent statutes of a similar character is to restrain the irresponsible action of the former sheriff's juries and to interpose the guiding influence of a court of record between the citizen and the State in the matter of the exercise of the right of eminent domain by the latter. But neither by the present statute nor by any other similar act of Congress have condemnation proceedings been wholly assimilated to ordinary proceedings at common law. The proceeding here is wholly statutory. The jury is not a common law jury; nor is it required, although here permitted, to proceed in the presence of the court or according to the usual course of the common law. There is no requirement that the testimony taken before it should be reduced to writing, or that minutes of it should be kept, or that minutes, if kept, should be preserved

and produced in court. It is distinctly provided, however, that the jury, after viewing the premises, should " hear and receive " such evidence as might be offered by any of the parties; and it was at this time and before this jury that all the evidence to be adduced should have been submitted; and there is no reservation in the statute of a right to take testimony at any other time. The proposition, therefore, that the court should proceed to have testimony taken in antagonism to the verdict of the jury is wholly unwarranted. The authority of the court under the statute was to " hear and determine any objections " that might be filed, and, if it regarded the objections well founded, to order the impaneling of another jury, before which testimony could be taken. Of course, a court of general jurisdiction has inherent authority to order the taking of testimony, in any manner which it thinks expedient, for the elucidation of any matter of fact which it is required to decide; and the right to be *heard* at law means not only the right to state one's case, but likewise and equally the right to establish it by means of witnesses. But it is well established that, in cases where the verdict of a jury is to be attacked, whether it be that of a common law jury or any other jury, the right to be heard by the means of witnesses does not involve the production of witnesses in open court or before a commissioner to establish facts already testified to before the jury. The practice is to submit affidavits to show some such action on the part of the jury as to justify the court in setting aside the verdict and directing a new trial. That practice was properly followed in this case; and the exceptions or objections of the appellants, with the affidavits supporting them, were heard and determined by the court. The statute, therefore, was fully complied with, and the rights of the parties were preserved. If a statement of the testimony, which was taken before the jury, or any part of it, was necessary for a hearing before the court on the exceptions or objections, it could have been, and in fact to some extent it was, set forth in the affidavits filed in the cause on both sides. It is not denied that these affidavits were considered by the court. They were not, it is true, allowed to

prevail; but that is what may·happen in any motion for·a new trial.

We must conclude on this point that the appellants had all the hearing in the court below to which they were entitled by the statute; and that the statute is not objectionable for .refusal to authorize and allow such hearing.

We have not here the means of determining whether the court below was right or wrong in its determination of the exceptions interposed by the appellants. While it may be assumed that, in cases like the present, the right of appeal is given by the statute which established this court, and it is inferred from the thirteenth section of the statute under consideration that it was contemplated by it that the right might be exercised, yet it is impossible for this court to review the rulings of the court below upon matters of fact where the facts upon which those rulings are based are not brought before us by bill of exceptions or in some other authorized way. We have here no bill of exceptions; .we have not the facts in any way on which the jury acted. And yet we are asked here substantially to put ourselves in the place of the court below, and to grant what is virtually no more than a motion for a new. trial, which that court has refused to grant. A motion for a new trial is usually in the discretion of the trial court, and ordinarily is not the subject of review in an appellate tribunal.

· It is true that there are some things in the record before us which may be supposed to have a tendency to show that the jury was misled, or improperly influenced by an apparent threat of counsel for the Commissioners, into the adoption of an erroneous standard of assessment; and that arbitrarily and without justification they assumed to assess one-half of the award of damages as benefits· against the adjacent .property. But they were allowed by statute to assess that amount; and inasmuch as in other cases, where the acts of Congress themselves have arbitrarily undertaken to direct the assessᴛment of such one-half [such acts] have been sustained by the Supreme Court of the United .States as violating no right (*Wight* v. *Davidson,* 181 U. S. 371), we .cannot

assume to say that the jury adopted an illegal and erroneous standard in this case. It is a question of fact, upon which we cannot pass, and not a question of law, that, in the absence of the threat to which reference has been made, the jury might have adopted some different standard.

What we have said in general with regard to our inability to review the action of the court below in the absence of facts upon which to base the review, is especially applicable to one of the assignments of error which it may be proper here to specify. This is that the jury assessed benefits against the appellant Clapp to the amount of $1,815 over and above the award of damages to him for the taking of part of his property. Now, this was not necessarily wrong of itself; it depends upon the facts and circumstances. A small part of his land may have been taken, and a very much larger part may have been benefited. Again we have not the facts or the testimony before us whereby to determine.

We may review these and other similar cases in order to ascertain whether, in our opinion, the court below has exercised, or failed to exercise its jurisdiction, or has improperly taken jurisdiction, or has not proceeded in accordance with the requirements of law; but it is difficult, if not impossible, under statutes of the character of that now before us for consideration, to review the decision of that court upon the matters of fact presented to it, unless the testimony adduced before the jury, or so much thereof as may be necessary, or some equivalent for such testimony, is brought before us by way of bill of exceptions, or in some other proper mode. We cannot exercise appellate jurisdiction upon fragmentary and insufficient statements of fact.

It follows that, inasmuch as no error has been made to appear in the order of the Supreme Court of the District of Columbia here appealed from, that order must be, and it is hereby, *affirmed, with costs. And it is so ordered.*